IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRANDON A. GOODWIN,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>N.D.C.S. MEDICAL, KEITH P. HUGHES, M.P. hired surgeon; and SOUTHWEST LINCOLN SURGERY CENTER,<br><br>　　　　　　Defendants. | 4:19CV3114<br><br>**MEMORANDUM AND ORDER** |

Plaintiff filed a Complaint on December 12, 2019. (Filing 1.) He has been given leave to proceed in forma pauperis. (Filing 9.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff is an inmate currently confined at the Tecumseh State Correctional Institution ("TSCI"). He brings this action for damages pursuant to 42 U.S.C. § 1983 against NDCS[1] Medical, "Hired Surgeon" Keith P. Hughes M.D. ("Dr. Hughes"),[2] and Southwest Lincoln Surgery Center. Liberally construed, Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments.

---

[1] The court understands "NDCS" to refer to the Nebraska Department of Correctional Services.

[2] Plaintiff refers to Dr. Hughes as "Kieth P. Hughes M.P." (*See* Filing 1 at CM/ECF p. 1.) The court, however, will correct Dr. Hughes' name to "Keith P. Hughes M.D." based on the attachments to Plaintiff's Complaint. (*See* Filing 1 at CM/ECF p. 13.)

Plaintiff alleges he underwent surgery on March 15, 2016, at Southwest Lincoln Surgery Center (the "Surgery Center") during which Dr. Hughes "was supposed to remove all broken hardware" from Plaintiff's left ankle. (Filing 1 at CM/ECF p. 4.) Plaintiff later learned that Dr. Hughes left a broken piece of hardware in Plaintiff's ankle without informing Plaintiff of such. Plaintiff alleges he was supposed to undergo physical therapy immediately following surgery, but NDCS Medical did not provide physical therapy until over two years later after Plaintiff repeatedly raised the issue through grievances and Inmate Interview Requests. Plaintiff alleges that even after he was provided physical therapy, NDCS staff often refused to take [him] not letting [him] [know] of a pass" while he was on the confinement unit. (*Id*. at CM/ECF pp. 5, 25.)

Plaintiff alleges that, as a result of not receiving regular physical therapy as ordered, he developed arthritis, tendonitis, "plantfootitus," nerve problems in his ankle, foot, and calf, and a "constant ach[e] during daily walking and sleeping." (*Id*. at CM/ECF p. 5.) Plaintiff contends that the failure to provide him physical therapy "in an appropriate time [led] to other medical issues that [he] might be stuck with [or] handicapped." (*Id*.) As relief, Plaintiff seeks $500,000 in damages.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

2

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

**A. NDCS Medical**

Plaintiff sues NDCS Medical for damages for alleged improper medical treatment. However, a suit may be brought under § 1983 only against a "person" who acted under color of state law. Generally, a state, its agencies and instrumentalities, and its employees in their official capacities are "not 'person[s]' as that term is used in § 1983, and [are] not suable under the statute, regardless of

the forum where the suit is maintained." *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200–01 (1991). *See also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983). Thus, § 1983 does not create a cause of action against NDCS Medical.

Moreover, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Thus, Plaintiff's claims for money damages against NDCS Medical, a state instrumentality, is barred by the Eleventh Amendment and must be dismissed.

**B. Dr. Hughes and Southwest Lincoln Surgery Center**

Plaintiff sues Dr. Hughes and the Surgery Center pursuant to 42 U.S.C. § 1983. In order to succeed on a § 1983 claim, a plaintiff must demonstrate that the defendants acted under color of state law. *West*, 487 U.S. at 49 ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"); *see also Filarsky v. Delia*, 566 U.S. 377, 383 (2012) ("Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983.").

Here, Plaintiff's Complaint is void of any specific allegation indicating that either Dr. Hughes or the Surgery Center acted under color of state law. Rather, the

4

Complaint and its attachments appear to indicate that Dr. Hughes is a private physician, the Surgery Center is a private medical facility, and NDCS referred Plaintiff to these outside medical providers for treatment on at least two occasions. (*See* [Filing 1 at CM/ECF pp. 13](), [20](), [22](), [24]().) Absent more specific allegations demonstrating sufficient contacts between the state and Dr. Hughes and the Surgery Center, Plaintiff's Complaint fails to state a claim against these Defendants under § 1983. *See West,* 487 U.S. at 49–52 (private physician, *under contract with the state,* to provide services at a state-prison hospital on a part-time basis acts under color of state law for § 1983 purposes when treating state prison inmate (emphasis added)); *Bevins v. Becker Cty., Minnesota*, No. CV 16-4340 (NEB/BRT), 2018 WL 7247176, at *10 (D. Minn. Oct. 30, 2018), *report and recommendation adopted*, No. 16-CV-4340 (NEB/BRT), 2019 WL 397322 (D. Minn. Jan. 31, 2019) (finding private physicians were not state actors where there was no contract and no proof of an ongoing relationship between the jail and the physicians, where it appeared that inmates were taken to physicians' facilities on an as-needed basis, and the physicians treated inmates in a private facility and exercised independent medical judgment); *Griffis v. Medford*, No. CIV. 05-3040, 2007 WL 2752373, at *6 (W.D. Ark. Sept. 20, 2007) (finding that "a private physician treating an inmate at a private facility utilizing his independent medical judgment is not answerable to the state and does not act under color of state law for purposes of § 1983"); *see also Steele v. Meade Cty. Jail Officials*, No. CIV. 06-5087-AWB, 2008 WL 4449924, at *2 n.1 (D.S.D. Sept. 18, 2008) (citing cases examining whether the actions of private physicians who are not under contract with the jail fall under the umbrella of state action).

Even assuming that Dr. Hughes and the Surgery Center are state actors, Plaintiff's Complaint is still deficient. First, Plaintiff does not specify the capacity in which he sues Dr. Hughes so the court must presume he brings claims against Dr. Hughes in his official capacity only. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper

5

notice to the defendants. Absent such an express statement, the suit is construed as being against the defendants in their official capacity. A suit against a public employee in his or her official capacity is merely a suit against the public employer." (internal citations omitted)). As discussed above, the Eleventh Amendment bars claims for damages by private parties against an employee of a state sued in the employee's official capacity.

With respect to the Surgery Center, "[a] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Sanders v. Sears, Roebuck & Col.*, 984 F.2d 972, 975 (8th Cir. 1993) (citing *Monell*, 436 U.S. at 690). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir.1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> To establish the existence of a governmental custom, a plaintiff must prove:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Here, Plaintiff does not allege that the Surgery Center has a "policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Sanders*, *supra*. In fact, Plaintiff's Complaint does not contain any factual

6

allegations regarding the Surgery Center's involvement in any constitutional violation. Thus, Plaintiff has failed to allege a plausible claim for relief against the Surgery Center.

Although Plaintiff's Complaint cannot go forward as pleaded, the court shall grant Plaintiff leave to file an amended complaint against Dr. Hughes in his individual capacity[3] and proper NDCS defendants. State corrections officials in their *individual* capacities may be held *personally* liable for inflicting constitutional injuries under 42 U.S.C. § 1983. This means that Plaintiff must allege facts indicating that individually named NDCS medical personnel were *personally involved* with the decisions affecting Plaintiff's medical care, or the lack thereof. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff).

## C. Deliberate-Indifference Claim

Should Plaintiff choose to file an amended complaint, he should be aware of the elements of the cause of action he seeks to assert. The constitutional obligation to provide medical care to those in custody may be violated when officials "intentionally deny[ ] or delay[ ] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim.") (quotations omitted).

To prevail on this claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *See Estelle*, 429 U.S. at 106. The deliberate-indifference standard includes both an objective and a subjective

---

[3] If Plaintiff chooses to file an amended complaint to pursue a § 1983 claim against Dr. Hughes, Plaintiff must also allege facts to demonstrate that Dr. Hughes was acting under color of state law.

component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Defendants knew of, but deliberately disregarded, those needs. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (Eighth Amendment claim based on inadequate medical attention requires proof that officials knew about excessive risks to inmate's health but disregarded them and that their unconstitutional actions in fact caused inmate's injuries); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

> Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate. An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate. Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision.

*Schaub*, 638 F.3d at 914–15 (internal quotations and citations omitted).

Here, Plaintiff claims Dr. Hughes failed to remove all broken hardware and did not inform Plaintiff of such. Plaintiff also claims NDCS medical staff failed to provide Plaintiff with physical therapy as had been ordered after his surgery. "When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow." *Dadd v. Anoka Cty.*, 827 F.3d 749, 756 (8th Cir. 2016) (right to adequate medical treatment was clearly established when pretrial detainee arrived at jail after dental surgery with Vicodin prescription for severe pain and deputies and jail nurse ignored detainee's complaints of pain and requests for treatment; deputies and jail nurse acted with deliberate indifference); *see also Foulks v. Cole Cty., Mo.*, 991 F.2d 454, 455–57

(8th Cir. 1993) (holding there was liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain, and refused to provide medication they were aware was prescribed); *Majors v. Baldwin*, 456 Fed. App'x 616, 617, 2012 WL 739347 (8th Cir. 2012) (unpublished per curiam) (holding that plaintiff had established a deliberate indifference claim where defendants withheld prescribed pain medication and did not provide adequate post-operative treatment); *Motton v. Lancaster Cty. Corr.*, No. 4:07CV3090, 2008 WL 2859061, at *6 (D. Neb. July 21, 2008) (noting that the knowing failure to administer prescribed medicine can constitute deliberate indifference, but to establish constitutional violation, inmate must produce evidence that delay in providing medical treatment had detrimental effect on inmate).

**D. State Law Malpractice Claim**

Liberally construed, Plaintiff's Complaint also may raise a state law medical malpractice claim against Dr. Hughes and the Surgery Center. However, it appears from the Complaint that such a claim would be barred by the statute of limitations.

A medical malpractice cause of action in Nebraska must be commenced:

> within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; Provided, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier[.]

Neb. Rev. Stat. § 25-222.

The Nebraska Supreme Court has concluded that discovery in this context "occurs when the party knows of facts sufficient to put a person of ordinary

9

intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action." *Gordon v. Connell*, 545 N.W.2d 722, 726 (Neb. 1996). In addition, "one need not know the full extent of one's damages before the limitations period begins to run, as a statute of limitations can be triggered at some time before the full extent of damages is sustained." *Id*.

Here, Plaintiff alleges that Dr. Hughes failed to remove all broken hardware during his surgery on March 15, 2016. Plaintiff attached to his Complaint a radiology consultation report from Bryan Medical Center dated January 17, 2017 which states: "There is a remaining screw within the distal tibia which extends 2 mm beyond the medial tibial cortex. This could be potentially symptomatic." (Filing 1 at CM/ECF p. 15.) Additionally, an entry in Plaintiff's institutional medical records dated April 24, 2017 mentions the "broken screw in left ankle," and Plaintiff was also examined by Dr. Hughes on May 18, 2017 and the "fracture screw in the distal tibia" was noted. (*Id*. at CM/ECF pp. 17, 20.) Thus, Plaintiff's Complaint establishes that Plaintiff knew of the remaining screw, at the latest, by May 18, 2017, which is within the two-year limitations period following Plaintiff's surgery.

Absent equitable tolling, Plaintiff filed this suit more than two years after his surgery and any "discovery" of his injury and outside the statute of limitations period. Nebraska's tolling statute, Neb. Rev. Stat. § 25-213, provides that the limitations period may be tolled under certain circumstances, including for periods of imprisonment. *But see Gordon v. Connell*, 545 N.W.2d 722, 726 (Neb. 1996) ("[A] showing of a recognizable legal disability, separate from the mere fact of imprisonment, which prevents a person from protecting his or her rights is required to entitle a prisoner to have the statute of limitations tolled during imprisonment."). If Plaintiff seeks to pursue a state law medical malpractice claim against Dr. Hughes or the Surgery Center, then Plaintiff must include allegations demonstrating that he is entitled to equitable tolling of the limitations period.

## IV. OTHER PENDING MOTIONS

### A. Motion for Counsel

Plaintiff filed a motion (filing 12) seeking the appointment of counsel. The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id*. Having considered these factors, the request for the appointment of counsel will be denied without prejudice to reassertion.

### B. Motion for Status and for Copies

Plaintiff also filed what the court construes as a motion for status and a motion for copies. (Filing 15.) Plaintiff's motion for status is granted. The court has conducted its initial review of Plaintiff's Complaint, determined that the Complaint may not proceed to service of process as it stands, but will grant Plaintiff leave to file an amended complaint in accordance with this Memorandum and Order.

Plaintiff requests a copy of his complaint. The statutory right to proceed in forma pauperis does not include the right to receive copies of documents without payment. 28 U.S.C. § 1915; *see also Haymes v. Smith*, 73 F.R.D. 572, 574 (W.D.N.Y.1976) ("The generally recognized rule is that a court may not authorize the commitment of federal funds to underwrite the necessary expenditures of an indigent civil litigant's action.") (citing *Tyler v. Lark*, 472 F.2d 1077, 1078 (8th Cir.1973)). If Plaintiff requires copies of court documents, he should contact the

clerk's office to determine the proper method of requesting and paying for copies. Accordingly, Plaintiff's motion for a copy of his complaint is denied.

## V. CONCLUSION

While Plaintiff's claims may not proceed to service of process for the reasons discussed above, Plaintiff may file an amended complaint asserting a claim for deliberate indifference to a serious medical need against Dr. Hughes in his individual capacity and individually named NDCS medical personnel in their individual capacities who were *personally involved* with the decisions affecting Plaintiff's medical care, or the lack thereof. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this action without further notice to Plaintiff. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1. Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sets forth a viable claim for deliberate indifference to a serious medical need against Dr. Hughes in his individual capacity and individually named NDCS medical personnel in their *individual capacities* who were *personally involved* with the decisions affecting Plaintiff's medical care, or the lack thereof. If Plaintiff fails to file an amended complaint, or the court finds that the amended complaint is insufficient, this matter will be dismissed without further notice for failure to state a claim upon which relief may be granted.

2. Plaintiff's motion for the appointment of counsel (filing 12) is denied without prejudice to reassertion.

3. Plaintiff's motion for status (filing 15) is granted.

4. Plaintiff's motion for a copy of his complaint (filing 15) is denied.

5. The clerk of the court is directed to amend the caption to list Defendant Dr. Hughes as "Keith P. Hughes M.D., hired surgeon."

6. The clerk of the court is directed to set a pro se case management deadline using the following text: **July 13, 2020**: check for amended complaint.

Dated this 12th day of June, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge