IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRANDON A. GOODWIN, | |
| Plaintiff, | **4:19CV3114** |
| vs. | |
| N.D.C.S. MEDICAL, KEITH P. HUGHES, M.D. hired surgeon; SOUTHWEST LINCOLN SURGERY CENTER, KATHRYN SCHULZ, Individual and Official capacities; DR. JEFFREY KASSELMAN, M.D., Individual and Official capacities; JEFFREY A. DAMME, M.D., Individual and Official capacities; BRENDA HAITH, P.A., Individual capacity; CHERYL FLINN, P.A. C, Individual capacity; G. HUSTAD, M.D., Individual and Official capacities; JUVET CHE, M.D., Individual and Official capacities; RANDY KOHL, M.D., Individual and Official capacities; STRASBURGER, D.R., Individual and Official capacities; DAVID SAMANI, M.D., Individual and Official capacities; CHAMBERLAN, D.R., Individual and Official capacities; and WENDY KARS, LPN, Individual capacity; | **MEMORANDUM AND ORDER** |
| Defendants. | |

Plaintiff, a state prisoner, filed his pro se Complaint (filing 1) on December 12, 2019, and has been granted leave to proceed in forma pauperis ("IFP") (filing 9). The court determined on initial review that Plaintiff's Complaint fails to state a claim upon which relief may be granted, but on its own motion gave Plaintiff leave to

amend. ([Filing 16](#).) After the court granted Plaintiff an extension to file an amended complaint (filing 18), an Amended Complaint was timely filed on August 5, 2020. ([Filing 21](#).) The court will now conduct an initial review of Plaintiff's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A, or whether this action should proceed to service of process.

## I. LEGAL STANDARDS ON INITIAL REVIEW

The Prison Litigation Reform Act ("PLRA") requires the court to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review, the court must "dismiss the complaint, or any portion of the complaint," it determines "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Comparable language is contained in 28 U.S.C. § 1915(e)(2)(B) (applicable to IFP plaintiffs).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal

quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff is an inmate currently confined at the Tecumseh State Correctional Institution ("TSCI"). He brings this action for damages pursuant to 42 U.S.C. § 1983 against two private medical providers, Keith P. Hughes, M.D. hired surgeon ("Dr. Hughes"), and Kathryn A. Schulz, P.A.-C ("P.A. Schulz"), and numerous Nebraska Department of Correctional Services ("NDCS") medical staff and personnel: Jeffrey Kasselman, M.D. ("Dr. Kasselman"); Jeffrey Damme, M.D. ("Dr. Damme"); Brenda Haith, P.A. ("P.A. Haith"); Cheryl Flinn, P.A. C ("P.A. Flinn"); G. Hustad, physician ("Dr. Hustad"); Juvet Che, M.D. ("Dr. Che"); Randy Kohl, M.D. ("Dr. Kohl"); Dr. Strasburger; David Samani, M.D. ("Dr. Samani"); and Wendy Kars, LPN ("Nurse Kars") (Filing 21 at CM/ECF pp. 3-6).[1] Liberally construed, Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments.

---

[1] NDCS Medical and the Southwest Lincoln Surgery Center are named as Defendants in the caption, but they are not identified as Defendants in the "Parties" section or body of the Amended Complaint. In addition, although Dr. Chamberlan is named as a Defendant in the caption and identified as a Defendant in the "Parties" section of the Amended Complaint, allegations regarding Dr. Chamberlan are crossed out in the body of the Amended Complaint. (Filing 21 at CM/ECF pp. 12, 27.) Thus, Plaintiff appears to have abandoned any claims against these three Defendants, and the court will direct the clerk of the court to "terminate" these Defendants as parties to the case.

In the Amended Complaint, Plaintiff alleges that in early 2015, while confined at Nebraska State Penitentiary ("NSP"), he complained to medical staff of pain caused by hardware in his left ankle and requested an outside consultation and surgery to remove the hardware. (*Id.* at CM/ECF pp. 23-24, 27.) Plaintiff asserts that his complaints and requests were ignored. (*Id.* at CM/ECF p. 24.)

When Plaintiff was transferred to TSCI in December 2015, he continued to complain of pain in his left ankle caused by the hardware. Plaintiff eventually underwent surgery on March 15, 2016 at Southwest Lincoln Surgery Center during which Dr. Hughes and P.A. Schulz were "to remove all broken hardware (screws-pins-plate)" from Plaintiff's left ankle. (*Id.* at CM/ECF p. 21.) Plaintiff later learned that Dr. Hughes and P.A. Schulz left a broken piece of hardware in Plaintiff's ankle without informing Plaintiff or NDCS medical staff of such. (*Id.* at CM/ECF pp. 21-22.)

After surgery, Plaintiff alleges that he experienced pain from the remaining hardware in his left ankle. (*Id.* at CM/ECF p. 22.) He asserts that Dr. Hughes and P.A. Schulz prescribed pain medication and ordered Plaintiff to undergo physical therapy and to return in six to eight weeks for a follow-up. (*Id.* at CM/ECF pp. 22, 26, 38.) Plaintiff alleges that NDCS medical staff Defendants did not follow or ignored these orders and interfered with prescribed treatment, denied medications, denied treatment, denied Plaintiff's requests to consult with an outside specialist for removal of the retained hardware in his left ankle, and delayed medical treatment. (*Id.* at CM/ECF pp. 9-12.) Plaintiff alleges that, since the surgery, he has "experienced chronic pain" and has been unable to participate in daily activities because of "severe pain" while walking. (*Id.* at CM/ECF pp. 34-36.) Plaintiff also alleges that excessive delay in scheduling surgery to remove the remaining hardware "could mean permanent disability." (*Id.* at CM/ECF pp. 22-23.)

As injuries, Plaintiff states that he has "sustained broken hardware in left ankle," has "ongoing tendon pain on arch of foot," has "ongoing" Achilles tendon

pain, and has "cramps in upper left calf" due to "disability" and walking "all the time." (*Id.* at CM/ECF p. 13.)

As relief, Plaintiff seeks money damages from each individual Defendant. (*Id.* at CM/ECF pp. 9-12.) He also requests surgery to remove the broken, retained hardware in his left ankle. (*Id.* at CM/ECF p. 12.)

### III. DISCUSSION OF CLAIMS

Plaintiff sets forth two causes of action: (1) a 42 U.S.C. § 1983 claim that all Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments; and (2) a state law medical malpractice claim against Defendants Dr. Hughes and P.A. Schulz.

## A. Section 1983 Claims: Deliberate Indifference to Medical Needs

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"); *see also Filarsky v. Delia*, 566 U.S. 377, 383 (2012) ("Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983.").

The constitutional obligation to provide medical care to those in custody may be violated when officials "intentionally deny[ ] or delay[ ] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim.") (quotations omitted).

5

To prevail on this claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *See Estelle*, 429 U.S. at 106. The deliberate-indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Defendants knew of, but deliberately disregarded, those needs. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (Eighth Amendment claim based on inadequate medical attention requires proof that officials knew about excessive risks to inmate's health but disregarded them and that their unconstitutional actions in fact caused inmate's injuries); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

"Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub*, 638 F.3d at 914-15 (internal quotations and citation omitted). "An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." *Id.* at 915 (citation omitted). "Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision." *Id.* (internal quotations and citation omitted).

### 1. Official Capacity Claims

The Amended Complaint indicates that multiple Defendants are being sued in their official capacities. As the court explained in its previous Memorandum and Order (filing 16 at CM/ECF pp. 4, 6), the Eleventh Amendment bars claims for

damages by private parties against an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). The court specifically advised Plaintiff that he could amend his Complaint to assert "a claim for deliberate indifference to a serious medical need against Dr. Hughes *in his individual capacity* and individually named NDCS medical personnel in their *individual capacities*." (*See* id. at CM/ECF p. 12 (first emphasis added; second emphasis in original).) As such, all § 1983 official capacity claims will be dismissed without prejudice.

### 2. Individual Capacity Claims

#### a. Dr. Hughes and P.A. Schulz

According to the Amended Complaint, Dr. Hughes and P.A. Schulz are medical providers at Nebraska Foot and Ankle P.C. and were acting under color of state law when treating Plaintiff. (Filing 21 at CM/ECF pp. 20-21.)

Plaintiff alleges that he underwent surgery on March 15, 2016, during which Dr. Hughes and P.A. Schulz were "to remove all broken hardware (screws-pins-plate)" from Plaintiff's left ankle. (*Id.* at CM/ECF p. 21.) Plaintiff later learned that Dr. Hughes and P.A. Schulz left a broken piece of hardware in Plaintiff's ankle without documenting that fact and without informing Plaintiff or NDCS medical staff of such. (*Id.* at CM/ECF pp. 21-22.) Plaintiff asserts that Dr. Hughes and P.A. Schulz did not acknowledge the broken hardware that remained in Plaintiff's ankle until over a year later on May 18, 2017, when they evaluated Plaintiff for complaints of "pain (arch of the left foot, nerve damage, and Achille tendon pain)" resulting from the retained broken hardware. (*Id.* at CM/ECF p. 22.) During that appointment, Plaintiff alleges that Dr. Hughes and P.A. Schulz "denied that Plaintiff could ever feel such pain and that the broken remaining hardware . . . would in fact never be a bother to Plaintiff." (*Id.*) However, Plaintiff states that Dr. Hughes and P.A. Schulz ultimately prescribed pain medication and ordered Plaintiff to undergo physical

therapy and to return in six to eight weeks for a follow-up. (*Id.* at CM/ECF pp. 22, 26, 38.) Plaintiff appears to allege that Dr. Hughes and P.A. Schulz failed to schedule surgery to remove the broken, retained hardware in his left ankle, "knowing that excessive delay could mean permanent disability." (*Id.* at CM/ECF pp. 22-23.)

Liberally construed, the conduct of Dr. Hughes and P.A. Schulz could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against Dr. Hughes and P.A. Schulz.

### b. Dr. Strasburger

Plaintiff alleges in January-April 2015, while imprisoned at NSP, he saw Dr. Strasburger for pain caused by "retained hardware in left ankle." (*Id.* at CM/ECF p. 23.) Dr. Strasburger told Plaintiff that "there [was] nothing that could be done and there [was] nothing wrong." (*Id.*) Plaintiff alleges that Dr. Strasburger ignored Plaintiff's complaints and denied "any medication, any doctor's visits or physical therapy" just because Plaintiff was close to being discharged. (*Id.* at CM/ECF pp. 11, 23-24.) Plaintiff alleges that Dr. Strasburger "had the authority to schedule [an] outside appointment or to simply meet with Plaintiff but refused to do so." (*Id.* at CM/ECF p. 11.) Plaintiff asserts that, even though he was close to being discharged, surgery could have been scheduled and that the delay in surgery until the following year "could mean permanent disability." (*Id.* at CM/ECF p. 24.)

Liberally construed, the conduct of Dr. Strasburger could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against Dr. Strasburger.

### c. Dr. Hustad and P.A. Flinn

Plaintiff alleges that on January 28, 2016, he saw Dr. Hustad and P.A. Flinn at the Diagnostic & Evaluation Center ("DEC") for pain caused by hardware in his ankle and for his request to have the hardware in his ankle surgically removed. (*Id.* at CM/ECF pp. 10, 24.) Plaintiff alleges that Dr. Hustad and P.A. Flinn told Plaintiff he would only be prescribed ibuprofen for pain and that surgery would have to wait until Plaintiff is placed in "a more permanent facility." (*Id.*) Plaintiff asserts P.A. Flinn "turned a blind eye to Plaintiff's requests for medical treatment." (*Id.* at CM/ECF p. 10.)

Liberally construed, the conduct of Dr. Hustad and P.A. Flinn could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against Dr. Hustad and P.A. Flinn.

### d. Dr. Che

Plaintiff alleges that on April 24, 2017, Dr. Che sent a fax to P.A. Schulz at Nebraska Foot and Ankle P.C., asking for treatment recommendations "after discovering broken remaining hardware and receiving complaints of pain from Plaintiff." (*Id.* at CM/ECF p. 25.) Plaintiff claims that Dr. Che was aware that P.A. Schulz ordered physical therapy, pain medication, and a follow-up appointment, but that Dr. Che "completely ignored" these orders. (*Id.* at CM/ECF pp. 10-11, 25-26.) Plaintiff also alleges that Dr. Che discontinued Plaintiff's prescription for hydrocodone, even though Plaintiff was still in severe pain, solely because Plaintiff was found with marijuana. (*Id.* at CM/ECF pp. 25, 28.)

Liberally construed, the conduct of Dr. Che could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against Dr. Che.

### e. Dr. Samani

Plaintiff alleges that on April 27, 2015, he saw Dr. Samani at NSP regarding complaints of pain and hardware in his left ankle. (*Id.* at CM/ECF pp. 5, 27.) Plaintiff alleges that Dr. Samani "requested for Plaintiff to see consultation, and to remove hardware." (*Id.* at CM/ECF p. 27.) Plaintiff asserts that Dr. Samani "failed to follow through" with consultation and surgery, "giving Plaintiff no instructions to get surgery done." (*Id.*)

Plaintiff further asserts that, after Plaintiff's surgery in March 2016, Dr. Samani knew that broken hardware remained in Plaintiff's ankle and that Plaintiff had sustained nerve and tendon damage, resulting in chronic pain in his ankle. (*Id.* at CM/ECF p. 28.) Plaintiff claims that, although Dr. Samani was aware that Dr. Hughes and P.A. Schulz had ordered Plaintiff to undergo physical therapy, receive gabapentin and Lyrica for neuropathy, and be scheduled for a follow-up appointment, Dr. Samani disregarded and ignored these orders. (*Id.* at CM/ECF pp. 11-12, 28-29.) Plaintiff also alleges that Dr. Samani, along with Dr. Che, discontinued Plaintiff's prescription pain medication solely because Plaintiff was caught with marijuana. (*Id.* at CM/ECF p. 28.)

Liberally construed, the conduct of Dr. Samani could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against Dr. Samani.

**f. Dr. Kohl**

Plaintiff also names as a Defendant an NDCS administrator/supervisor, Dr. Kohl, NDCS Medical Director.[2]

"It is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006). To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (internal quotations omitted).

Here, Plaintiff alleges that Dr. Kohl had direct knowledge of Plaintiff's complaints and medical condition but did nothing to assist him or ensure he received proper care. (*Id.* at CM/ECF pp. 11, 29-30.) More specifically, Plaintiff alleges that Dr. Kohl has denied his requests "to see outside consult for follow up to remove hardware." (*Id.* at CM/ECF p. 11.) At this stage of the proceedings, Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against Dr. Kohl.

**g. Nurse Kars**

Plaintiff alleges that Nurse Kars did not allow Plaintiff to view his medical chart/file on multiple occasions and then would "cover[] up her refusals." (*Id.* at CM/ECF pp. 12, 31.)

The Amended Complaint does not allege that Nurse Kars was personally involved with the decisions affecting Plaintiff's medical care, or the lack thereof.

---

[2] It appears that Dr. Kohl was the Medical Director at NDCS at the relevant time but has since retired. *See* NDCS appoints new medical director (1011now.com) (October 27, 2016). However, Plaintiff makes no such allegation.

Moreover, regarding his allegations that Nurse Kars did not allow him to review his medical file, "a prisoner has no constitutional right to review or obtain copies of his prison medical records." *Blanton v. Blue*, No. 4:16CV-P10-JHM, 2016 WL 2858922, at *3 (W.D. Ky. May 16, 2016); *see also Pope v. Corizon Health*, No. 19-10870, 2019 WL 2189469, at *3 (E.D. Mich. May 21, 2019) (prisoner "had no constitutional right to review or obtain copies of her prison medical record"); *Veenstra v. Idaho State Bd. of Corr.*, No. 1:15-CV-00270-EJL, 2017 WL 4820353, at *6 (D. Idaho Oct. 24, 2017) ("The Court has found no authority for the proposition that a prisoner has a liberty interest in accessing his or her medical records."), *aff'd*, 785 F. App'x 390 (9th Cir. 2019); *Moore v. Chapedelaine*, No. 3:15-cv-775 (VAB), 2015 U.S. Dist. LEXIS 92899, at *6, 2015 WL 4425799 (D. Conn. July 15, 2015) (prisoner's complaint that he was denied access to prison medical records "cannot amount to a constitutional violation"); *Martikean v. United States*, No. 3:11-CV-1774-M-BH, 2012 U.S. Dist. LEXIS 77034, at *10, 2012 WL 1986919 (N.D. Tex. Apr. 6, 2012) (finding that "there is no constitutional requirement that an inmate be given the right to review or obtain his prison medical records") (emphasis in original); *Ball v. Famiglio*, No. 1:CV-08-0700, 2011 U.S. Dist. LEXIS 34587, at *27-28, 2011 WL 1304614 (M.D. Pa. Mar. 31, 2011) ("While inmates have a constitutional right to access to medical care, . . . there is no authority for an Eighth Amendment right to review medical records."); *Dunn v. Corr. Corp. of Am.*, No. CV 3:09-087, 2010 WL 2817264, at *3 (S.D. Ga. June 15, 2010) ("[A] prisoner does not have a liberty interest in his medical records or other constitutional right to access such records."), *report and recommendation adopted sub nom. Dunn v. Rodriguez*, No. CV 3:09-087, 2010 WL 2817267 (S.D. Ga. July 15, 2010). Therefore, Plaintiff cannot state a constitutional claim based on his allegations that Nurse Kars refused to give him his medical records.

Plaintiff's individual-capacity claims against Nurse Kars will be dismissed for failure to state a claim upon which relief may be granted.[3]

---

[3] Plaintiff sued Nurse Kars only in her individual capacity. (*Id.* at CM/ECF p. 5.)

### h. P.A. Haith

Plaintiff asserts that P.A. Haith knew that Plaintiff was supposed to have been prescribed medications and scheduled for physical therapy and a follow-up appointment with Dr. Hughes and P.A. Schulz but denied Plaintiff's medical needs and requests. (*Id.* at CM/ECF pp. 10, 32.) Plaintiff also alleges that on April 2, 2018, P.A. Haith "ridiculed Plaintiff in regards to Plaintiff's complaint of urinary issues" and denied that Plaintiff had any history of urinary problems, which were documented in medical charts and for which he had been prescribed medication. (*Id.* at CM/ECF p. 32.) Plaintiff further alleges that while he was held in segregation his medical appointments were routinely cancelled because of staffing shortages and that P.A. Haith, having knowledge of this, "documented and accepted forced refusal forms from corporal officers." (*Id.*)

Liberally construed, the conduct of P.A. Haith could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against P.A. Haith.

### i. Dr. Kasselman

Plaintiff alleges that he saw Dr. Kasselman at TSCI "multiple times" for complaints of pain and informed him "multiple times" about the broken hardware in his ankle, requesting its removal and a follow-up appointment, but Dr. Kasselman "made no effort to help or address [Plaintiff's] problems." (*Id.* at CM/ECF pp. 3, 33.) Plaintiff also alleges that Dr. Kasselman discontinued or withheld prescription pain medication for no reason relating to the medication or a medical issue but rather for a missed appointment for a blood draw. (*Id.* at CM/ECF pp. 33-34, 36-37.) Furthermore, he alleges that Dr. Kasselman denied Plaintiff pain medication because of Plaintiff's drug history and "drug seeking behavior" even though Plaintiff previously had been prescribed the medication and Dr. Kasselman knew Plaintiff

13

suffered from neuropathy and nerve damage pain. (*Id.* at CM/ECF pp. 33, 39.) Plaintiff alleges that Dr. Kasselman discredits and has failed to address Plaintiff's complaints of chronic pain and "continues to deny Plaintiff any pain management." (*Id.* at CM/ECF pp. 37-39.) Plaintiff asserts that Dr. Kasselman has not followed, and intentionally interfered with, Dr. Hughes' treatment orders, ignored Plaintiff's complaints of pain, and failed to treat Plaintiff "for anything." (*Id.* at CM/ECF pp. 37-40.) Plaintiff claims that Dr. Kasselman "is still currently denying proper medical treatment," denying medication for Plaintiff's nerve damage, and denying Plaintiff's request to see an outside specialist. (*Id.* at CM/ECF p. 9.)

Liberally construed, the conduct of Dr. Kasselman could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against Dr. Kasselman.

### j. Dr. Damme

Plaintiff alleges that Dr. Damme was aware of Plaintiff's complaints of ankle pain, cramping, and neuropathy, and that despite this knowledge, Dr. Damme, along with Dr. Kasselman, discontinued Plaintiff's prescription pain medication for Plaintiff's refusal to attend an appointment and because he believed Plaintiff was malingering and trying to get "high." (*Id.* at CM/ECF pp. 41, 42.) Plaintiff further alleges that Dr. Damme told him that there was no remaining hardware in his ankle. (*Id.* at CM/ECF p. 41.) Plaintiff states that Dr. Damme failed to make a timely referral to a specialist and intentionally interfered with treatment previously prescribed. (*Id.* at CM/ECF p. 43.) Plaintiff claims Dr. Damme is denying medications to help Plaintiff's nerve damage and chronic pain, denying Plaintiff's request to see an outside specialist, denying physical therapy, and denying that Plaintiff's medical complaints are "possible." (*Id.* at CM/ECF p. 9.)

Liberally construed, the conduct of Dr. Damme could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the

proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against Dr. Damme.

## B. State Law Malpractice Claims

Liberally construed, Plaintiff's Complaint also may raise state law medical malpractice claims against Dr. Hughes and P.A. Schulz. In its previous Memorandum and Order, the court found that, "[a]bsent equitable tolling, Plaintiff filed this suit more than two years after his surgery and any 'discovery' of his injury and outside the statute of limitations period." (Filing 16 at CM/ECF p. 10.) The court advised Plaintiff that, if he seeks to pursue a state law medical malpractice claim, then he must include allegations demonstrating that he is entitled to equitable tolling of the limitations period. (*Id.*)

Nebraska's tolling statute, Neb. Rev. Stat. § 25-213, provides that the limitations period may be tolled under certain circumstances, including for periods of imprisonment. However, "a showing of a recognizable legal disability, separate from the mere fact of imprisonment, which prevents a person from protecting his or her rights is required to entitle a prisoner to have the statute of limitations tolled during imprisonment." *Gordon v. Connell*, 545 N.W.2d 722, 726 (Neb. 1996). In the Amended Complaint, Plaintiff has not included any allegations demonstrating that he is entitled to equitable tolling of the limitations period. Thus, he has not cured the deficiencies of the Complaint, and Plaintiff's medical malpractice claims will be dismissed without prejudice.

## IV. OTHER PENDING MOTIONS

## A. Motion for Temporary Restraining Order

Plaintiff filed a motion for temporary restraining order against Defendants Dr. Kasselman, Dr. Damme, and P.A. Haith "for [their] position in the facility at T.S.C.I. is of that medical, for under [their] care the lack of concern and defensive attitude is

15

why this case is brought forth." (Filing 25 at CM/ECF p. 1.) Although Plaintiff does not specify, the court construes Plaintiff's motion as seeking a temporary restraining order that requires these Defendants to refrain from denying or delaying Plaintiff medical care.

The standards set forth by *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), apply to Plaintiff's motion. In *Dataphase*, the Eighth Circuit Court of Appeals, sitting en banc, clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest. *Id.* at 114. Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).

The court has carefully reviewed the record and finds that Plaintiff's allegations in this matter do not entitled him to preliminary injunctive relief. Plaintiff has not demonstrated that he faces a threat of irreparable harm. Indeed, Plaintiff states in his motion that he is "finally getting some proper treatment, proper examinations by specialists, proper medications, and proper treatments (x-rays and p/t [physical therapy])." (*Id.*) Accordingly, the court will deny his request for a temporary restraining order.

## B. Motion for Counsel

Plaintiff filed a renewed motion seeking the appointment of counsel. (Filing 26.) "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining

16

whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, No. 20-2560, 2021 WL 2285235, at *1 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

First, as for the complexity factors, the court finds that this is a relatively straightforward deliberate indifference to a medical needs case. *See Recca*, 2021 WL 2285235, at *1.

Second, the record before the court suggests that Plaintiff has the ability to investigate the facts. For instance, Plaintiff attached a number of exhibits to his complaint (filing 21-1), including medical records and inmate interview requests, to support his allegations. *See Recca*, 2021 WL 2285235, at *1 (citing *McNeil v. Lowney*, 831 F.2d 1368, 1372 (7th Cir. 1987)).

Third, the record before the court suggests that Plaintiff has the ability to present his claims, at least through the initial stage of the litigation. Plaintiff's pro se filings are generally well-written. *See id.* (citing *Ward v. Smith*, 721 F.3d 940, 943 (8th Cir. 2013); *Nachtigall v. Class*, 48 F.3d 1076, 1082 (8th Cir. 1995)). In his Amended Complaint, Plaintiff quoted from and cited relevant authority bearing on his deliberate indifference to medical needs claims, suggesting his capacity for doing legal research to support his claims and arguments. *See id.* This reinforces the impression that Plaintiff is "capable of self-representation" through this stage of the litigation. *See id.* (quoting *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997)). Further reinforcing this impression, Plaintiff has filed a motion for extension of time to pay his initial partial filing fee (filing 10), two requests for appointment of counsel (filings 12 & 26), and a temporary restraining order (filing 25).

Fourth, as for the presence or absence of disputed testimony, although this case ultimately may turn on resolving the dispute between Plaintiff's version of events and Defendants' version of events, as well as a credibility assessment of the

parties if the case proceeds to trial, it has not yet progressed to that stage. *See Recca*, 2021 WL 2285235, at *1. "Thus, this factor does not weigh heavily in the analysis." *Id.* (citing *Johnson v. Williams*, 788 F.2d 1319, 1323 (8th Cir. 1986) ("[T]he weight to be given any one factor will vary with the case."); *Rager v. Augustine*, 760 F. App'x 947, 949-50 (11th Cir. 2019) (per curiam) (discounting this factor where "the district court dismissed [the] claims at the summary judgment and dismissal stages, before any trial skills were necessary")).

As a prisoner, Plaintiff understandably faces challenges representing himself, but "most indigent prisoners will face similar challenges." *See id.* (citing *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018)). On this record and having considered the factors outlined above, the request for the appointment of counsel will be denied without prejudice to reassertion.

## V. CONCLUSION

Liberally construed, Plaintiff's Amended Complaint states plausible claims for relief against Dr. Hughes, P.A. Schulz, Dr. Kasselman, Dr. Damme, P.A. Haith, P.A. Flinn, Dr. Hustad, Dr. Che, Dr. Kohl, Dr. Strasburger, and Dr. Samani, in their individual capacities only, for deliberate indifference to Plaintiff's objectively serious medical needs.[4] Claims alleged against these Defendants in their official capacities will be dismissed without prejudice. The Amended Complaint fails to state a deliberate indifference claim against Nurse Kars. Plaintiff's state law medical malpractice claim against Dr. Hughes and P.A. Schulz will be dismissed without prejudice. Defendants "N.D.C.S. Medical," Southwest Lincoln Surgery Center, and Dr. Chamberlan will be terminated as parties to this case. Plaintiff's motion for a temporary restraining order and renewed request for appointment of counsel will be denied.

---

[4] The court cautions Plaintiff that this is only a preliminary determination based solely on the allegations in his Amended Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

IT IS THEREFORE ORDERED:

1.      The case will proceed to service of process against Defendants Dr. Hughes, P.A. Schulz, Dr. Kasselman, Dr. Damme, P.A. Haith, P.A. Flinn, Dr. Hustad, Dr. Che, Dr. Kohl, Dr. Strasburger, and Dr. Samani, in their individual capacities only, for deliberate indifference to Plaintiff's objectively serious medical needs.

2.      All claims alleged against the aforesaid Defendants in their official capacities are dismissed without prejudice.

3.      Plaintiff's deliberate indifference to medical needs claim against Defendant Wendy Kars, LPN, in her individual capacity, is dismissed without prejudice.

4.      Plaintiff's state law medical malpractice claims against Defendants Dr. Hughes and P.A. Schulz are dismissed without prejudice.

5.      The clerk of the court is directed to terminate the following Defendants, who shall no longer be parties to this action: (1) "N.D.C.S. Medical"; (2) "Southwest Lincoln Surgery Center"; (3) "Chamberlan, D.R."; and (4) "Wendy Kars, LPN."

6.      The clerk of the court is further directed to update the caption to reflect that the remaining Defendants are sued in their individual capacity only.

7.      Plaintiff's motion for temporary restraining order (filing 25) is denied.

8.      Plaintiff's renewed request for appointment of counsel (filing 26) is denied without prejudice to reassertion.

9.     The Clerk of the Court is directed to complete a summons form and a USM-285 form for each Defendant, in his or her individual capacity, using the following addresses:

Keith P. Hughes, M.D.
Nebraska Foot & Ankle, P.C.
7030 Helen Witt Drive, Suite B
Lincoln, NE 68512

Kathryn Schulz
Nebraska Foot & Ankle, P.C.
7030 Helen Witt Drive, Suite B
Lincoln, NE 68512

Jeffrey Kasselman, M.D.,
Tecumseh State Correctional Institution
2725 Hwy 50
PO Box #900
Tecumseh, NE 68450

Jeffrey A. Damme, M.D.
Tecumseh State Correctional Institution
2725 Hwy 50
PO Box #900
Tecumseh, NE 68450

Brenda Haith, P.A.
Tecumseh State Correctional Institution
2725 Hwy 50
PO Box #900
Tecumseh, NE 68450

Cheryl Flinn, P.A. C
Diagnostic and Evaluation Center
3220 West Van Dorn Street
PO Box 22800
Lincoln, NE 68522-9284

Gary Hustad, M.D.
Diagnostic and Evaluation Center
3220 West Van Dorn Street
PO Box 22800
Lincoln, NE 68522-9284

David Samani, M.D.
Bryan Health
2222 S. 16th Street #240
Lincoln, NE 68502

Juvet Che, M.D.
2429 M Street
Omaha, NE 68107

Scott Strasburger, M.D.
Syracuse Area Health - Strasburger Orthopaedics
7121 Stephanie Lane, Suite 100
Lincoln, NE 68516

10.     The Clerk of the Court is further directed to deliver the summonses, the
necessary USM-285 Forms, and copies of Plaintiff's Amended Complaint (filing 21)
and this Memorandum and Order to the Marshals Service for service of process on

21

Defendants.[5] Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(h); Neb. Rev. Stat. § 25-509.01.

11.     The clerk of the court is directed to obtain the last known address for Dr. Kohl from the Marshals Service.[6] Upon obtaining the necessary address, the clerk of court is directed to complete a summons form and a USM-285 form for Randy Kohl, M.D., in his individual capacity at the address provided by the Marshals Service and forward them together with a copy of the Amended Complaint (filing 21) and a copy of this Memorandum and Order to the Marshals Service for service on Defendant Dr. Kohl in his individual capacity. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Fed. R. Civ. P. 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

12.     The clerk of court is directed to file under seal any document containing the last known personal address for Defendant Dr. Kohl.

---

[5] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

[6] The court's independent research has uncovered a potential personal address for Dr. Kohl which will be shared with the clerk of court and the Marshals Service.

13.    The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

14.    Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

15.    The clerk of the court is directed to set a pro se case management deadline in this case with the following text: **September 15, 2021**: Check for completion of service of summons.

16.    Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 17th day of June, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge