IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRANDON A. GOODWIN, | |
| Plaintiff, | **4:19CV3114** |
| vs. | |
| KEITH P. HUGHES, M.D. hired surgeon, Individual capacity; KATHRYN SCHULZ, Individual capacity; DR. JEFFREY KASSELMAN, M.D., Individual capacity; JEFFREY A. DAMME, M.D., Individual capacity; BRENDA HAITH, P.A., Individual capacity; JUVET CHE, M.D., Individual capacity; RANDY KOHL, M.D., Individual capacity; and DAVID SAMANI, M.D., Individual capacity; | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the court on Defendant Dr. David Samani's ("Dr. Samani") Motion for Summary Judgment (filing 89). For the reasons that follow, the motion is granted.

## I. BACKGROUND

Plaintiff Brandon A. Goodwin is an inmate currently incarcerated at the Tecumseh State Correctional Institution ("TSCI"), and he brings this action under 42 U.S.C. § 1983 against Dr. Samani and the other Defendants for alleged deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments. The court conducted an initial review of Plaintiff's Amended Complaint (filing 21) on June 17, 2021 and allowed this matter to

proceed to service of process against the Defendants in their individual capacities only.

In his Amended Complaint, Plaintiff alleges that in early 2015, while confined at Nebraska State Penitentiary ("NSP"), he complained to medical staff of pain caused by hardware in his left ankle. Plaintiff alleges that on April 27, 2015, he saw Dr. Samani at NSP regarding his complaints and that Dr. Samani "requested for Plaintiff to see consultation, and to remove hardware." (*Id*. at CM/ECF pp. 5, 27.) Plaintiff asserts that Dr. Samani "failed to follow through" with consultation and surgery, "giving Plaintiff no instructions to get surgery done." (*Id*. at CM/ECF p. 27.)

Plaintiff eventually underwent surgery in March 2016 to remove broken hardware from his ankle. Plaintiff asserts that, after Plaintiff's surgery, Dr. Samani knew that broken hardware remained in Plaintiff's ankle and that Plaintiff had sustained nerve and tendon damage, resulting in chronic pain in his ankle. (*Id*. at CM/ECF p. 28.) Plaintiff claims that, although Dr. Samani was aware that Defendants Keith P. Hughes, M.D., and Kathryn A. Schulz, P.A.-C, had ordered Plaintiff to undergo physical therapy, receive gabapentin and Lyrica for neuropathy, and be scheduled for a follow-up appointment, Dr. Samani disregarded and ignored these orders. (*Id*. at CM/ECF pp. 11–12, 28–29.) Plaintiff also alleges that Dr. Samani discontinued Plaintiff's prescription pain medication solely because Plaintiff was caught with marijuana. (*Id*. at CM/ECF p. 28.)

Plaintiff alleges that, since the surgery, he has "experienced chronic pain" and has been unable to participate in daily activities because of "severe pain" while walking. (*Id*. at CM/ECF pp. 34-36.)

Dr. Samani filed a Motion for Summary Judgment on November 24, 2021. (Filing 89.) With his motion, Dr. Samani filed a Brief in Support (filing 91) and attached his Declaration (filing 91-1), his curriculum vitae (filing 91-2), and copies of the medical records Dr. Samani prepared for each of his encounters with

Plaintiff (filing 91-3). On December 20, 2021, Plaintiff timely filed a Brief in Opposition (filing 103) and an Index of Evidence (filing 104). Dr. Samani filed a Reply Brief (filing 105) on December 23, 2021. This matter is fully submitted for disposition.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation. Rather the nonmovant has an affirmative burden to designate specific facts creating a triable controversy." *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791–92 (8th Cir. 2011) (cleaned up). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## III. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "The statement of facts should consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a)(2) (emphasis in original). "The statement must not contain legal conclusions." *Id.*

The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.*

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion for summary judgment." NECivR 56.1(1)(a) (emphasis in original). On the other hand,"[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(1)(b)(1) (emphasis in original).

## IV. EVIDENCE PRESENTED

In this case, Dr. Samani's Brief in support of his motion for summary judgment contains a separate statement of material facts in accordance with the court's local rules with references to the record and properly authenticated evidence. (Filing 91 at CM/ECF pp. 4–7.) The documents referenced include Dr. Samani's Declaration (filing 91-1) and the Amended Complaint (filing 21).

In his brief in opposition to summary judgment, Plaintiff does not specify the numbered paragraphs in Dr. Samani's statement of material facts that he seeks to dispute. Moreover, the statements in Plaintiff's brief (filing 103) and the exhibits included in Plaintiff's Index of Evidence (filing 104) cannot be considered evidence in opposition to the motion for summary judgment as they are not properly authenticated. "To be considered on summary judgment, documents must be authenticated by . . . an affidavit made on personal knowledge setting forth such

facts as would be admissible in evidence . . . ." *Life Inv'rs Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1121-22 (8th Cir. 2012) (quoting *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635–36 n. 20 (8th Cir. 2000)); *see also* NECivR 7.1(a)(2)(C) ("An affidavit must identify and authenticate any documents offered as evidence [in opposition to a motion].").

Consequently, Dr. Samani's statement of material facts will be deemed admitted for purposes of deciding the motion. *See* NECivR 56.1(1)(b)(1); Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."). Although Plaintiff is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g).

## V. RELEVANT UNDISPUTED MATERIAL FACTS

The court finds there is no genuine dispute regarding the following facts, which are largely taken from Dr. Samani's brief and which Dr. Samani contends entitle him to judgment as a matter of law:

1.   Plaintiff is an inmate incarcerated at the Tecumseh State Correctional Institution. (Filing 21 at 6.)

2.   Dr. Samani is a board-certified orthopedic surgeon and the Chairman of the Department of Orthopedics at Bryan LGH Medical Center in Lincoln, Nebraska. (Filing 91-1 at CM/ECF p. 1, ¶ 2.)

3.   Since approximately 2015, Dr. Samani has contracted with the Nebraska Department of Correctional Services ("NDCS") to provide onsite orthopedic specialty clinics at NDCS facilities. (*Id*. at CM/ECF p. 2, ¶ 3.)

4.      At these onsite specialty clinics, Dr. Samani sees inmates referred to him for orthopedic consultations by NDCS primary care medical providers. (*Id*., ¶¶ 3–4.)

5.      Dr. Samani does not have control over whether, or how often, an inmate patient is referred and approved to see him for orthopedic specialty clinic services. Under NDCS Administrative Regulations and Medical Protocols, Dr. Samani does not have the authority to order or provide an inmate patient a repeat x-ray, surgery to remove a syndesmotic screw, or nerve pain medication. (*Id*. at CM/ECF pp. 2, 5, ¶¶ 4, 9(f).)

6.      While Dr. Samani is a board-certified orthopedic surgeon, he only evaluates inmates at NDCS facilities; those facilities are neither adequate nor equipped for Dr. Samani to perform surgeries or CT scans there. (*Id*. at CM/ECF p. 2, ¶ 5.)

7.      During Dr. Samani's contractual provision of orthopedic services at NDCS facilities, NDCS referred Plaintiff to Dr. Samani three times. (*Id*., ¶ 7.)

8.      During his first encounter with Plaintiff on April 27, 2015, Dr. Samani obtained Plaintiff's pertinent history regarding an open reduction internal fixation surgery of his tibia in January of 2013 and fracture of his fibula. X-rays showed a fracture of the syndesmotic screw. Dr. Samani recommended Plaintiff undergo removal of two syndesmotic screws. (*Id*. at CM/ECF p. 3, ¶ 9(a).)

9.      On September 22, 2016, NDCS again referred Plaintiff to Dr. Samani, and Dr. Samani reviewed Plaintiff's pertinent medical history regarding his left ankle fracture, surgery to repair the fracture, and subsequent surgery to remove a plate and screws from his fibula. Dr. Samani listened to Plaintiff's complaints of chronic pain, performed a physical examination of Plaintiff's ankle, and recommended hydrocodone for Plaintiff's pain, an ankle stabilizing orthosis brace,

and a CT scan of Plaintiff's left ankle for further evaluation and possible screw removal. (*Id.* at CM/ECF pp. 3–4, ¶ 9(c).)

10.     During his November 25, 2020 encounter with Plaintiff, Dr. Samani obtained Plaintiff's pertinent history of ankle fracture, fixation surgery, removal of syndesmotic screw, fracture of screw with remnant in the distal tibia, neuropathy to his left lower extremity, and prescription history of gabapentin. Dr. Samani again performed a physical examination of Plaintiff's ankle and observed dorsiflexion improvement and some spasm to the posterior tibial tendon. Dr. Samani recommended a repeat x-ray of Plaintiff's ankle and possible removal of syndesmotic screw along with gabapentin 600mg twice per day. (*Id.* at CM/ECF pp. 4–5, ¶ 9(e).)

11.     In Dr. Samani's opinion, the screws he recommended for removal did not pose a serious medical risk to Plaintiff at the time of any of the three consultations and were not the cause of any pain he may have been experiencing at the time. Rather, the pain Plaintiff was experiencing was more likely the result of osteoarthritic changes in Plaintiff's ankle rather than the presence of the broken syndesmotic screw. (*Id.* at CM/ECF pp. 3–5, ¶ 9.)

12.     Dr. Samani is of the opinion that the syndesmotic screws did not pose a serious medical risk to Plaintiff, and removal of the syndesmotic screws from Plaintiff's left ankle was not medically necessary within any defined time frame. (*Id.*)

13.     Dr. Samani is personally familiar with the standard of care, skill, and knowledge applicable to orthopedic surgeons providing care and treatment to patients at correctional institutions in Lincoln, Nebraska, and similar communities. (*Id.* at CM/ECF p. 5, ¶ 10.)

14.     Based upon his education, skill, experience, review of the pertinent medical records, and personal knowledge of the care he provided to Plaintiff on

8

each occasion, it is Dr. Samani's opinion that he exercised the degree of care, skill, and knowledge ordinarily possessed and used under like circumstances by orthopedic surgeons providing care and treatment to patients at correctional institutions in Lincoln, Nebraska, or similar communities at all times. In his opinion, he did not breach the medical standard of care in any respect in connection with the professional healthcare services he provided to Plaintiff. (*Id*., ¶ 11.)

15.   It is also Dr. Samani's opinion that the professional healthcare services he provided to Plaintiff were not the proximate cause of any damages alleged in this lawsuit. (*Id*., ¶ 12.)

## VI. DISCUSSION

Plaintiff's federal constitutional claim against Dr. Samani is brought pursuant to 42 U.S.C. § 1983, which requires a showing that the alleged deprivation of rights was caused by conduct of a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Dr. Samani admits he contracted with the NDCS "to provide professional health services to individuals incarcerated in certain NDCS facilities, including the [NSP]." (Filing 91-1 at CM/ECF p. 2, ¶ 3.) Dr. Samani does not argue that summary judgment should be granted because he is not a proper defendant under § 1983.

To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *see also Laganiere v. Cty. of Olmsted*, 772 F.3d 1114, 1116 (8th Cir. 2014) ("The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs."). The deliberate-indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Defendants knew of, but deliberately

9

disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"For a claim of deliberate indifference, 'the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)); *see also Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (a prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment). Indeed, "[e]stablishing the subjective component of a deliberate indifference claim requires showing 'a mental state akin to criminal recklessness.'" *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Thompson v. King*, 730 F.3d 742, 746–47 (8th Cir. 2013)).

"The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007). The Eighth Circuit has held that prison medical professionals do not act with deliberate indifference where they do not ignore a prisoner's complaints but exercise independent medical judgment and attempt to treat them in a manner other than the precise manner the prisoner requests. *See Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (granting summary judgment to medical defendants who did not ignore inmate's complaints but saw inmate on several occasions and tried numerous treatments); *Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors were not deliberately indifferent where they treated prisoner on numerous occasions and offered sensible medication and treatment).

A prison doctor also does not act with deliberate indifference when, in an exercise of his professional judgment, he concludes that an inmate will not be placed at risk by foregoing a particular course of treatment, including surgery. *See,*

10

*e.g., Jenkins v. Cty. of Hennepin*, 557 F.3d 628, 632 (8th Cir. 2009) (holding defendant who decided to postpone x-ray based on medical judgment that injury was not urgent entitled to summary judgment); *Blondheim v. County of Olmsted*, 47 Fed. App'x 786 (8th Cir. 2002) (unpublished) (doctors at correctional facility were not deliberately indifferent by treating inmate's torn ACL conservatively over 4 years, mainly with Tylenol and ace bandages, even though they knew outside orthopedic surgeon had recommended surgery). Differences of opinion, mistakes, and even medical malpractice do not meet the exacting standard of deliberate indifference. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) ("At best, [the plaintiff's] allegations state a difference in opinion between himself and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation.").

Here, the uncontroverted evidence establishes that Dr. Samani saw Plaintiff on three occasions for orthopedic consultations as the result of referrals by NDCS primary care medical providers. At his April 27, 2015 encounter with Plaintiff, Dr. Samani obtained Plaintiff's relevant history of tibial surgery and fibular fracture, reviewed x-rays of Plaintiff's left ankle, and recommended surgery. (Filing 91-1 at CM/ECF p. 3, ¶ 9(a).) During his September 22, 2016 encounter with Plaintiff, Dr. Samani reviewed Plaintiff's pertinent medical history regarding his left ankle fracture, surgery to repair the fracture, and subsequent surgery to remove a plate and screws from his fibula. (*Id.*, ¶ 9(c).) Dr. Samani listened to Plaintiff's complaints of chronic pain, performed a physical examination of Plaintiff's ankle, and recommended hydrocodone for Plaintiff's pain, an ankle stabilizing orthosis brace, and a CT scan of Plaintiff's left ankle for further evaluation and possible screw removal. (*Id.*) During his November 25, 2020 encounter with Plaintiff, Dr. Samani obtained Plaintiff's pertinent history of ankle fracture, fixation surgery, removal of syndesmotic screw, fracture of screw with remnant in the distal tibia, neuropathy to his left lower extremity, and prescription history of gabapentin. (Id. at CM/ECF pp. 4–5, ¶ 9(e).) Dr. Samani again performed a physical examination of Plaintiff's ankle and observed dorsiflexion improvement and some spasm to the posterior tibial tendon. (*Id.*) Dr. Samani recommended a repeat x-ray of Plaintiff's

11

ankle and possible removal of syndesmotic screw along with gabapentin 600mg twice per day. (*Id.*) The care and treatment provided by Dr. Samani was consistent with the scope of services of the onsite orthopedic specialty clinics he had contracted with NDCS to provide. (*Id.* at CM/ECF pp. 2, 5, ¶¶ 3–4, 9(f).)

In Dr. Samani's opinion, the screws he recommended for removal did not pose a serious medical risk to Plaintiff at the time of any of the three consultations and were not the cause of any pain Plaintiff may have been experiencing at the time. Rather, the pain Plaintiff was experiencing was more likely the result of osteoarthritic changes in Plaintiff's ankle rather than the presence of the broken syndesmotic screw. (*Id.* at CM/ECF pp. 3–5, ¶ 9.) Dr. Samani is of the opinion that the syndesmotic screws did not pose a serious medical risk to Plaintiff, and removal of the syndesmotic screws from Plaintiff's left ankle was not medically necessary within any defined time frame. (*Id.*) It is also Dr. Samani's opinion that he "exercised the degree of care, skill, and knowledge ordinarily possessed and used under like circumstances by orthopedic surgeons providing care and treatment to patients at correctional institutions in Lincoln, Nebraska, or similar communities at all times," "did not breach the medical standard of care in any respect in connection with the professional healthcare services [he] provided to Plaintiff," and "the professional healthcare services [he] provided to Plaintiff were not the proximate cause of any damages alleged in this lawsuit." (*Id.*, ¶¶ 9–12.)

This undisputed evidence establishes that Dr. Samani provided Plaintiff with appropriate medical care and was not deliberately indifferent to any of Plaintiff's serious medical needs. Plaintiff argues, however, that Dr. Samani acted with deliberate indifference by failing to see and treat him well in advance of his release from prison in 2015 and by failing to provide treatment that Dr. Samani said he would provide when Dr. Samani was aware of Plaintiff's ongoing reports of pain. Plaintiff further disputes Dr. Samani's opinions regarding the link between the broken hardware and Plaintiff's pain, arguing that by "recommending surgery, medication and down-playing that the broken hardware has nothing to do with the

12

pain is contradicting and is in fact a contributing factor to the . . . problems with [Plaintiff's] ankle." (Filing 103 at CM/ECF p. 7.)

With respect to Plaintiff's allegation that Dr. Samani was deliberately indifferent for failing to adequately treat him both before and after his release from prison in 2015, Plaintiff has offered absolutely no evidence to support his assertion. Rather, Plaintiff offers only mere speculation that he "would possibly in fact wouldn't have broken hardware left inside his bone nor having difficulty he's experiencing right now." (*Id*. at CM/ECF p. 6.) Plaintiff's unsupported, speculative allegations are insufficient to rebut Dr. Samani's properly supported expert opinions that removal of the screws from Plaintiff's left ankle was not medically necessary within any defined time frame. *See Reid v. Griffin*, 808 F.3d 1191, 1193 (8th Cir. 2015) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment" (cleaned up)); *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (same).

Similarly, there is no evidence to support Plaintiff's claim that the broken remaining hardware in his ankle is the source of his pain and alleged injuries. Plaintiff's unverified, lay assertions are insufficient to rebut Dr. Samani's expert opinions. Rather, Plaintiff's allegations merely demonstrate Plaintiff's "difference of opinion over matters of expert medical judgment or a course of medical treatment [which] fail[s] to rise to the level of a constitutional violation." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118–19 (8th Cir. 2007) (second alteration in original and quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992)).

Finally, Plaintiff's claim that Dr. Samani was deliberately indifferent to his serious medical needs because he was aware of Plaintiff's ongoing reports of pain and failed to provide treatments he said he would provide does not create a genuine factual dispute that would prevent judgment in Dr. Samani's favor. Plaintiff's claim fails because the undisputed evidence establishes that Dr. Samani lacked

13

authority to provide Plaintiff with additional treatment. Dr. Samani had no authority to authorize and provide repeat x-rays, surgery to remove a syndesmotic screw, or nerve pain medication to or for Plaintiff as part of the services provided in the onsite orthopedic clinic. (Filing 91-1 at CM/ECF pp. 4–5, ¶ 9(d), (f).) As the Eighth Circuit has recognized, a medical professional cannot be found to have acted with deliberate indifference by not providing treatment he or she did not have the authority to provide. *See Bender*, 385 F.3d at 1137–38 (doctor could not be held liable for deliberate indifference when he believed that he lacked authority to order treatment plaintiff claimed he should have received); *see also Reid v. Sapp*, 84 Fed. App'x 550, 552 (6th Cir. 2003) (determining a doctor could not be liable for deliberate indifference because he lacked the authority to approve or deny surgery).

In sum, the record clearly shows that Dr. Samani provided appropriate medical care to Plaintiff. There is simply no evidence that Dr. Samani failed to provide treatment or medication to Plaintiff because of any indifference or apathy about Plaintiff's well-being. Rather, Dr. Samani listened to Plaintiff's complaints and provided care in the exercise of his professional judgment. See Allard, 779 F.3d at 772–73 (physician was entitled to summary judgment because he did not ignore plaintiff's complaints or condition but provided care and treatment). Dr. Samani's conduct rises nowhere near the level of criminal recklessness necessary to establish deliberate indifference. *See Ryan*, 850 F.3d at 425. To the contrary, the record establishes appropriate treatment of, not deliberate indifference to, Plaintiff's medical conditions.

Plaintiff's § 1983 claim against Dr. Samani, in his individual capacity, will therefore be dismissed with prejudice.

IT IS THEREFORE ORDERED that:

1.     Defendant Dr. Samani's Motion for Summary Judgment (filing 89) is granted. Plaintiff's claims against Dr. Samani are dismissed with prejudice. The

clerk's office is directed to terminate Defendant "David Samani, M.D.," as a party to this action.

2.     Defendant Dr. Samani's pending Motion to Set Expert Disclosure Deadlines (filing 145) is denied as moot.

Dated this 19th day of April, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge